

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JAN 3 0 2009

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| Lisa Shipley, | CIVIL ACTION NO.  |
| Plaintiff, | |
| v. | **1 09-CV-0265** |
| Hypercom Corporation, | |
| Defendant. | |

## COMPLAINT

### *Jurisdiction and Venue*

1.      Jurisdiction is proper in this Court pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, together with the Court's pendent jurisdiction over the state law claims.

2.      Venue is proper in the United States District Court for the Northern District of Georgia pursuant to 42 U.S.C. § 2000e-5(f)(3) because it is the judicial district where Plaintiff worked and where the unlawful employment practices occurred.

### *The Parties*

3.      Hypercom Corporation ("Defendant" or "Hypercom") is an Arizona corporation that maintains its principal place of business at 8888 East Raintree

Drive, Suite 300, Scottsdale, Arizona 85260.  At all relevant times, Defendant maintained a Georgia office at 4151 Ashford Dunwoody Road, Atlanta, Georgia 30319.

4.     Hypercom is a global provider of electronic payment products and services that include multi-lane terminals, countertop terminals, peripherals (such as printers, PIN pads, check readers, etc.), and related software.  Hypercom services customers in five regions throughout the world that include (1) North America, (2) Asia/Pacific, (3) Europe, Middle East and Africa ("EMEA"), (4) Mexico, Central America, and Caribbean ("MCC"), and (5) Latin America.  Each global region is overseen by a Managing Director.

5.     Plaintiff Lisa Shipley ("Plaintiff" or "Ms. Shipley") is an individual who was employed by Defendant, working out of its Georgia office beginning in 1996 and continuing through January 3, 2008, when she was forced to resign because of Hypercom's discriminatory conduct based on her gender (female).  At the time of her separation, Ms. Shipley served as the Senior Vice President and Managing Director of North America for Hypercom.

### Ms. Shipley's Position and Duties

6.     Ms. Shipley began her employment at Hypercom in 1996 in sales.  In the spring of 2002, she was promoted to President of Horizon Group (a division of

Hypercom), then to National Sales Manager of North America for Hypercom, and finally, in April 2007, to Senior Vice President and Managing Director of North America for Hypercom.

7.    As Senior Vice President and Managing Director of North America, Ms. Shipley was in charge of sales of Hypercom products throughout the United States and Canada. At the time of her departure, Ms. Shipley managed a team of 38 sales employees who reported to her. Ms. Shipley reported directly to Hypercom's President and Chief Executive Officer Phillippe Tartavull, who is male. Mr. Tartavulle was appointed President of Hypercom in February 2007 and President and Chief Executive Officer in December 2007.

8.    Prior to Mr. Tartavull's appointment, Ms. Shipley consistently received favorable performance reviews from all of her immediate supervisors.

9.    Ms. Shipley traveled on a weekly basis to visit customers, which included roughly 20-30 major U.S. banks, 100 independent sales organizations, credit card processors, and customers of Defendant's multi-lane products, in an effort to increase sales of Hypercom products and increase revenue for Hypercom from these sources.

10.    In addition to overseeing Hypercom sales in North America, Ms. Shipley managed Hypercom's multi-lane product group, which was sold almost

exclusively in the North America region. None of the other four Managing Directors was tasked with this extra responsibility.

### Ms. Shipley's Record of Achievement

11.   During her approximately 12 years of employment at Hypercom, Ms. Shipley maintained an outstanding record of achievement.

12.   Ms. Shipley was the largest producer of revenue for Hypercom in 2007 and 2008, out producing each of the other four global regions in these years.

13.   At the time of her separation on January 3, 2008, Ms. Shipley was the most senior-level female employee and the only female executive at Hypercom.

### Ms. Shipley's Male Counterparts

14.   The Managing Directors of Hypercom's four other regions – Asia/Pacific, EMEA, MCC, and Latin America – were all male. They also reported directly to Mr. Tartavull.

15.   Ms. Shipley generated more revenue for Hypercom than each of the male Managing Directors.

### Hypercom Treats Ms. Shipley Differently and Worse Than Male Counterparts

16.   Despite her outstanding achievements as Senior Vice President and Managing Director of North America, Mr. Tartavull treated Ms. Shipley differently and worse than her male counterparts.

17.    Specifically, upon information and belief, Ms. Shipley's male counterparts – the four other Managing Directors – received higher base salaries, and they were offered more favorable terms and conditions of employment, including, but not limited to, employment agreements that provided severance pay and other benefits, and a more lucrative commission plan. Ms. Shipley was never offered an employment agreement and did not receive comparable benefits.

18.    On numerous occasions, Ms. Shipley requested from Mr. Tartavull that she be provided with compensation, benefits, and an employment agreement comparable to her male counterparts. Mr. Tartavull repeatedly ignored or refused Ms. Shipley's requests for equal treatment.

19.    Mr. Tartavull treated Ms. Shipley differently and worse than her male counterparts in other terms and conditions of her employment as well. Mr. Tartavull created a hostile environment towards Ms. Shipley on the basis of her gender. For example, in meetings with the other Managing Directors and/or members of Hypercom's executive committee, Mr. Tartavull routinely treated Ms. Shipley in a condescending manner and made rude and derogatory statements to or about her. Mr. Tartavull did not treat other male counterparts in the same manner. Mr. Tartavull's conduct was based on Ms. Shipley's sex (female), was hostile, occurred repeatedly, and was pervasive.

20.    Mr. Tartavull also prevented Ms. Shipley from attending events necessary to successfully fulfill her job duties.  For example, he refused to allow Ms. Shipley to attend the largest and most important trade show of the year, held in Cartes, France in November 2007.  However, Mr. Tartavull permitted each of the male Managing Directors to attend that trade show.  Attending the trade show was critical for Ms. Shipley to be able to meet her sales goals for the upcoming year. The decision to not allow her to attend made it more difficult for Ms. Shipley to perform her job.  Mr. Tartavull's conduct was based on Ms. Shipley's gender (female) and altered the terms and conditions of her employment in comparison to her male counterparts.

21.    Moreover, Mr. Tartavull refused to work with or support Ms. Shipley in her role.  For example, Mr. Tartavull routinely ignored and failed to return Ms. Shipley's telephone calls and emails.  This made it difficult for her to perform her duties, particularly for those matters that Mr. Tartavull required that Ms. Shipley obtain his approval in advance of acting.  Upon information and belief, Mr. Tartavull did not ignore or fail to return the male Managing Directors' calls and emails.

22.    As a further example, Mr. Tartavull did not accompany Ms. Shipley on a single client visit during her service as Senior Vice President and Managing

Director of North America. This is important because, when the President and Chief Executive Officer accompanies a Managing Director, it helps the Managing Director develop business, make sales, and earn credibility with the clients. Mr. Tartavull did, however, accompany each of the male Managing Directors on visits to their clients.

23.    Mr. Tartavull's discriminatory and harassing tactics served no purpose but to humiliate Ms. Shipley and discourage her from succeeding at her job.

**_Hypercom Forces Ms. Shipley to Resign_**

24.    Ms. Shipley addressed these inequalities directly with Mr. Tartavull through email and in person. She expressly complained that she was being discriminated against on the basis of her gender (female) and that she was being subjected to a hostile environment on the basis of her gender. However, nothing was done to address these issues. On information and belief, Mr. Tartavull did not communicate any of Ms. Shipley's complaints of gender discrimination to any other employee of the company with authority to investigate and act upon the complaints.

25.    For example, in November 2007, after Mr. Tartavull refused to let her attend the trade show in France, Ms. Shipley met with Mr. Tartavull and told him she was not being treated fairly. In this meeting, Mr. Tartavull treated Ms. Shipley

in a condescending manner and refused to let her attend the meeting. On information and belief, Mr. Tartavull did not communicate Ms. Shipley's concerns to anyone else within the company with authority to investigate and act upon the concerns.

26.    Ms. Shipley had no one else within Hypercom with whom to raise these issues because it had no professional human resources presence at the time. Hypercom did not have adequate policies and procedures to prevent unlawful discrimination and harassment in the workplace.

27.    It was clear to Ms. Shipley that if she stayed in her position, she would continue to be discriminated against based on her gender (female). It was also clear that Hyperion was unwilling or unable to investigate and act upon complaints of discrimination against Mr. Tartavull. On January 3, 2008, Ms. Shipley had no choice but to resign. The working conditions imposed by Mr. Tartavull were so hostile, discriminatory, and in disregard of her complaints of discrimination and harassment that Ms. Shipley reasonably believed she was compelled to resign.

28.    Ms. Shipley filed a Charge of Discrimination with the Equal Employment Opportunity Commission, which was cross-filed with the Arizona Human Rights Commission. On November 12, 2008, Ms. Shipley received a

Notice of Right to Sue. (Attached hereto as "Exhibit A" is a true and correct copy of the Notice of Right to Sue letter).

### COUNT I – Title VII Discrimination on the Basis of Gender (Female)

29.     Plaintiff hereby incorporates Paragraphs 1 through 28 as though set forth in full herein.

30.     Ms. Shipley has been damaged as a direct and proximate result of Defendant's intentional, malicious, willful, wanton, and reckless or other violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, as amended.

31.     Hypercom's conduct was intentional and/or in reckless disregard of Ms. Shipley's federally protected rights.

32.     Ms.Shipley suffered emotional and mental distress as a proximate cause of the company's intentional discrimination against her in violation of Title VII. Ms. Shipley is entitled to compensatory and punitive damages in an amount up to the statutory limit as determined by a jury of her peers.

33.     Ms. Shipley is entitled to an award of attorneys' fees and costs incurred in this action as allowed by statute.

### COUNT II – Unpaid Wages

34.     Plaintiff hereby incorporates Paragraphs 1 through 33 as though set

forth in full herein.

35.   In the calendar year 2007, Ms. Shipley – either personally or through her sales team – secured sales of Hypercom products, of which Hypercom delayed shipment until 2008 or later, after Ms. Shipley's separation from the Company (collectively "Ms. Shipley's 2007 Sales").

36.   Ms. Shipley's 2007 Sales include without limitation purchase orders from Best Buy, valued at over $8,000,000, and from Total Merchandise Services, valued at roughly $2,000,000.  Hypercom delayed shipment of these products until 2008.

37.   Upon information and belief, Ms. Shipley's 2007 Sales also include other purchase orders secured by Ms. Shipley – either personally or through her sales team – in 2007 for Hypercom products, of which Hypercom delayed shipment until a later date, after Ms. Shipley's separation from the Company.

38.   Pursuant to the terms of Hypercom's commission plan and Hypercom policy and practices, Hypercom owes Ms. Shipley commissions for Ms. Shipley's 2007 Sales ("Ms. Shipley's 2007 Sales Commissions"), including without limitation $11,800 in commissions for the Total Merchandise Services sale.

39.   Ms. Shipley's 2007 Sales Commissions constitute wages that are owed to Ms. Shipley for her performance related to Ms. Shipley's 2007 Sales,

which Hypercom promised and agreed to pay. Ms. Shipley demanded payment of Ms. Shipley's 2007 Sales Commissions in January and February 2008, but Hypercom has refused to pay them.

40. Ms. Shipley has satisfied all conditions precedent and fully performed according to the terms of the written sales commission plan.

41. Hypercom's refusal to pay Ms. Shipley's 2007 Sales Commissions is in breach of contract and is a violation of Georgia Wage Payment laws, Ga. Code Ann. § 34-7-2, *eq. seq.* The refusal to pay Ms. Shipley according to the terms of the contract is in bad faith, has been stubbornly litigious and has put Ms. Shipley to unnecessary trouble and expense. Under and by virtue of O.C.G.A. Section 13-6-11, Ms. Shipley is entitled to recover her reasonable attorneys' fees and expenses of litigation.

42. Ms. Shipley is entitled to pre-judgment interest as allowed by O.C.G.A. §7-4-16 or as otherwise allowed by law.

### COUNT III – Equal Pay Act

43. Plaintiff hereby incorporates Paragraphs 1 through 42 as though set forth in full herein.

44. Hypercom paid Ms. Shipley lower compensation than it paid to male Managing Directors, who performed the same work as Ms. Shipley and whose jobs

required the same skill, effort, and responsibility. Moreover, Ms. Shipley and the male Managing Directors performed under similar working conditions.

45.   In addition, Ms. Shipley and the male Managing Directors – either personally or through their respective sales teams – secured purchase orders in 2007 for Hypercom products, of which Hypercom delayed shipment until 2008 or later (collectively "2007 Sales"). Upon information and belief, Hypercom paid each of the male Managing Directors commissions on such 2007 Sales; however, Hypercom did not pay Ms. Shipley commission on such 2007 Sales.

46.   Ms. Shipley has been damaged as a direct and proximate result of Defendant's intentional, malicious, willful, wanton, and reckless or other violation of the Equal Pay Act, 29 U.S.C. § 206(d) and Ga. Code Ann. § 34-5-1, *et. seq.*

WHEREFORE, Plaintiff claims a TRIAL BY JURY, judgment against Defendant, and:

(a)   Compensatory damages, including, but not limited to, emotional distress, damage to reputation, loss of enjoyment, damage to reputation, embarrassment, lost wages, and back pay, and accrued interest;

(b)   Punitive Damages;

(c)   Attorney's fees and litigation costs;

(d)   Interest; and

(e)     Such other relief in equity or law that may pertain.

Respectfully submitted: January 29, 2009

Randall D. Grayson
Georgia Bar No. 306560
Michael A. Dailey
Georgia Bar No. 203250
Attorneys for Plaintiff

**ANDERSON DAILEY LLP**
2002 Summit Boulevard
Suite 1250
Atlanta, Georgia 30319
404 442 1800 voice
404 442 1820 data
mdailey@andersondailey.com
rgrayson@andersondailey.com

*TO BE ADMITTED PRO HAC VICE*

David B. Ritter
Illinois Bar No. 6190040
Nineveh Alkhas
Illinois Bar No. 6295757
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street
Suite 1700
Chicago, IL  60602-3801
Telephone:  (312) 269-8000
Facsimile:  (312) 269-1747

Attorneys for Plaintiff Ms. Lisa Shipley

NGEDOCS: 1588093.3